FILED

2013 Jan-11  PM 01:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE  DIVISION

| | |
|---|---|
| **DEBORAH BOYD** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ] |
| | ]   **CV-12-BE-638-M** |
| **BAPTIST HEALTH SYSTEM, INC.;** | ] |
| **LIFE INSURANCE COMPANY OF** | ] |
| **NORTH AMERICA; ADVANTAGE** | ] |
| **2000, INC.,** | ] |
| | ] |
| **Defendants.** | ] |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on "Plaintiff's Motion to Remand" (doc. 8).  This issue has received thorough briefing, with Defendants LINA and Advantage 2000 filing briefs (docs. 13 & 14, respectively) setting forth the reasons for their opposition to the Plaintiff's motion and supporting brief (doc. 9), followed by Plaintiff's reply brief (doc. 16) and LINA's sur-reply (doc. 20).  The court has entered a stay of all proceedings pending a ruling on the motion to remand and the determination of the jurisdictional issue.  After reviewing those filings, the evidentiary submissions, and the applicable law, for the reasons stated in this Memorandum Opinion, the court FINDS that the motion to remand is due to be DENIED.

## I.  PROCEDURAL HISTORY

In the first incarnation of this matter, Plaintiff Deborah Boyd filed a case in the Circuit Court of St. Clair County in May of 2011 against Defendants Baptist Health System, Inc ("BHS"), Life Insurance Company of North America ("LINA"), and Advantage 2000, alleging

state law claims arising out of the failure to provide disability benefits.  Defendants removed the

case to this court, alleging federal question jurisdiction under 28 U.S.C. § 1331 based upon

preemption under the Employment Retirement Income Security Act, 29 U.S.C. § 1001-1461

(1974) ("ERISA").   Boyd filed a motion to remand, primarily on the grounds that she was

employed by BHS, an employer without an ERISA-preempted LTD plan because of its "church

plan" status.  Defendants did not dispute that BHS is exempt from ERISA but contended that

Baptist Health *Centers* ("BHC"), not BHS, employed Boyd, and that BHC is an ERISA-covered

employer.  In that case, CV-11-BE-1962-M, this court, noting a factual dispute among the parties

about the identity of Boyd's employer, and found that Defendants had not met their burden to

prove that ERISA preempted Boyd's state law claims.  It explained:

> Simply put, to trigger federal jurisdiction, Defendants must prove that BHC, the
> ERISA-covered employer, was in fact Ms. Boyd's employer.  While Defendants
> provided a number of documents *suggesting* BHC was Ms. Boyd's employer, the
> parties' ample submissions only raise legitimate uncertainty regarding Ms. Boyd's
> actual employer. . . .Thus, Defendants have failed to sufficiently establish that BHC,
> rather than BHS, employed Ms. Boyd for ERISA preemption and federal question
> jurisdiction under 28 U.S.C. § 1331.

(Doc. 20, at 2-4).  Therefore, the court remanded the case to the Circuit Court of St. Clair County

by an order dated July 29, 2011.  (Doc. 21).

On February 1, 2012, Boyd filed a First Amended Complaint in the Circuit Court of St.

Clair County against the same Defendants.  In contrast to the original Complaint, however,

Boyd's Amended Complaint acknowledges that she "was employed by Baptist Health *Centers*,

Inc." as opposed to BHS, although it claims that she "was provided disability Plan benefits

through Baptist Health Systems, Inc.'s disability Plan."  (Doc. 1-1, at 2, ¶ 2).   In this Amended

Complaint, Boyd asserts the following state law claims:  Count I - Fraud against LINA and BHS

in misrepresenting material facts regarding her eligibility for disability insurance benefits; Count II - Fraudulent Suppression of Material Facts against LINA and BHS regarding modification of the disability Plan contract and the conditions precedent to her disability claim's approval; Count III - Unjust Enrichment against BHS; Count IV - Breach of Contract against LINA by failing to provide disability insurance benefits to Boyd pursuant to the contract; Count V - Bad Faith failure to pay insurance against LINA; Count VI - Fraud against Advantage 2000 based on Ronald Morovitz of Advantage 2000's representation to Boyd that he was her attorney when he was not licensed to practice law in Alabama and based on his failure to disclose to Boyd the conflict of interest of Advantage 2000 based on its confidential and proprietary relationship with LINA; Count VII - Fraudulent Suppression against Advantage 2000 based upon Morovitz's concealing that he was not licensed to practice law in Alabama and that Advantage 2000 had a conflict of interest; Count VIII - Breach of Fiduciary Duty against Advantage 2000 based on its conflict of interest; Count IX - Violation of Alabama Legal Services Liability Act, Ala. Code § 6-5-570 *et seq.,* against Advantage 2000.

On February 23, 2012, Defendants removed the case to federal court a second time based upon Boyd's acknowledgment, stating that "[t]his is the first paper provided by Plaintiff in this litigation in which she has taken the position that *BHC* employed her." Because Defendants have always taken the position that BHC is an employer with an ERISA-preempted employee disability plan, Defendants assert that "[h]aving for the first time pled herself out of this material factual dispute, Plaintiff's filing of the First Amended Complaint triggered this Court's original jurisdiction." (Doc. 1, at 4). Defendants' removal petition also referenced Plaintiff's responses to discovery requests in which Boyd admitted that BHC was her employer and produced W-2s

from 2008 and 2009 confirming that BHC was her employer.

On March 16, 2012, Boyd filed the motion to remand presently before this court.  In response to the motion, LINA filed a brief attaching the affidavit of Tracy Hill (doc. 13-1), which attached several exhibits, including policy LK 960527 (doc. 13-1, at 5-35); the January 1, 2007 amendment to the group policy (doc. 13-1, at 36-46); the January 1, 2008 amendment to the group policy (doc. 13-1, at 47-58); the Summary Plan for Group Policy LK960527 available on the company intranet from January 1, 2008 through 2010 (doc. 13-1, at 59-93); and the Form 5500 filings for 2008 and 2009 that BHC files with the IRS regarding the employee benefit plan in question (doc. 13-1, at 94-134).

On March 30, 2012, BHS filed a "Motion to Stay the Trial of this Action and to Compel Arbitration," requesting that this court stay the trial of this action until the arbitration of all claims and issues raised in the suit (doc. 12).  The court deferred ruling on BHS's motion but *sua sponte* stayed the case pending a determination of jurisdiction.  BHS subsequently filed a similar motion to keep the case "on hold" pending binding arbitration (doc. 17) and a notice, filed by BHS, that arbitration is proceeding (doc. 21).

## II.  FACTS

The court notes that some of the facts listed emanate from the affidavit of Tracy Hill and its attachments, filed on April 2, 2012, after the removal of this matter.  Jurisdictional facts must be judged at the time of removal; however, this court may consider such post-removal evidence in assessing its jurisdiction *if* that evidence is relevant to the period of time up to and including the time of removal.  *See, e.g., Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 755-56 (11th Cir. 2010).

4

Boyd was an employee of BHC from March 24, 1994 to February 7, 2009.  Prior to January 1, 2007, Boyd participated in a Group Long-Term Disability Plan that LINA administered and insured.  The policyholder of that plan was originally Baptist Health System, Inc., and when the policy was first issued in 2005, Group Policy LK-960527,  eligible employees of both BHC and BHS could participate in the plan under that group policy.

Significant changes occurred in 2007 and 2008.   Effective January 1, 2007, the plan was amended to separate eligible employees of BHC and BHS into classes.  Effective January 1, 2008, a further amendment divided the plan into two separate plans, one for BHS employees and one for BHC employees.  From the 2008 amendment forward, eligible employees of BHC remained insured under Group Policy LK-960527 but the policy no longer covered BHS employees, who were insured under a separate plan with a different policy number.  From the 2008 amendment onward, only BHC employees were eligible to enroll in this plan under Group Policy LK-960527; BHC employees who submit claims for long-term disability benefits must do so under Group Policy LK-960527; and the policyholder's name for Group Policy LK-960527 was changed to "Baptist Health Centers, Inc."   (Doc. 31-1, at 3 & 48). Boyd acknowledges that, "for the purposes of determining ERISA jurisdiction in this case" the insurance policy under which she claims benefits, Group Policy LK-960527,  and the Plan in force at the relevant period is the document LINA filed with the Notice of Removal.  (Pl.'s Reply Br. Doc. 16, at 6; Policy Doc. 1-3, at 42 Amend. 1/1/8).  That amended policy under which Boyd claims benefits, Group Policy LK-960527, identifies *BHC* as its policyholder, and has done so since the amendment effective January 1, 2008.

BHC is a for-profit entity that is not exempt from tax under Section 501 of Title 26 of the

United States Code, and it files an Annual Return/Report of Employee Benefit Plan with the IRS

on form 550 regarding the Group LTD Plan, including a schedule for disability benefits provided

under Group Policy LK-960527.  BHC has not elected and could not elect for any BHC plan to

be a church plan as that term is defined by ERISA.

From January 1, 2008 through 2010, BHC was responsible for distributing Summary Plan

Descriptions to BHC employees regarding its Plan, and it claims to have fulfilled that

responsibility by making a Summary Plan Description (doc. 13-1, at 59-93) available to eligible

participants on BHC's company intranet.  Boyd claims that neither BHS nor BHC issued to her

any notice and/or summary of the change emanating from the 2008 amendment.

After January 1, 2008, Boyd remained enrolled in Group Policy LK-96-527 and was still

enrolled in that policy when she stopped working for BHC on or about February 7, 2009.  She

filed a disability claim under that Group Policy with LINA, and LINA initially paid benefits from

May 8, 2009 to May 10, 2010. During the period that LINA paid benefits, it required Boyd to

apply for Social Security Disability benefits and referred her to Advantage 2000.  Boyd contacted

Advantage 2000 and  understood that Advantage 2000 would provide her with a Social Security

lawyer to represent her and to assist with that application.  With the assistance of Ronald

Morovitz, an employee at Advantage 2000, she timely applied for Social Security benefits, and

on September 23, 2009, she received a favorable finding from the Social Security Administration

of total disability.   Boyd has subsequently learned that Morovitz is not licensed to practice law in

the State of Alabama.

On May 3, 2010, LINA notified Boyd that it was terminating her disability insurance.

She appealed that denial, and on September 14, 2010, LINA confirmed its decision to terminate

her disability insurance benefits.

Boyd subsequently requested that Advantage 2000 deliver to her the file regarding her application for Social Security benefits.  On or about February 17, 2011, Advantage 2000 refused to deliver Boyd's file to her, advising her that the correspondence between Advantage 2000 and LINA about her case was "confidential" and "proprietary."

### III. LEGAL STANDARD

"It is axiomatic that the jurisdiction of the federal courts is limited, with its scope defined by the Constitution and by statute." *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 548 (5th Cir. 1981).  The "burden of showing the existence of federal subject matter jurisdiction" rests upon the party removing the case to federal court.  *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.,* 591 F.3d 1337, 1343 (11th Cir. 2009).  The removing party meets its burden by proving by a preponderance of the evidence the facts supporting federal jurisdiction.  *McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002).  "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly."  *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999).  "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."  *Id.*  Therefore, the federal district court "must be certain of its jurisdiction before embarking upon a safari in search of judgment on the merits."  *Miller Brewing*, 663 F.2d at 548-49.

"The test ordinarily applied for determining whether a claim arises under federal law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint ....  Complete preemption is a narrow exception to the well-pleaded complaint rule and exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law

claim into a statutory federal claim." *Conn. State Dental Ass'n,* 591 F.3d at 1343. ERISA's civil

enforcement provision, Section 502(a), has such "extraordinary" preemptive power that it

"converts an ordinary state common law complaint into one stating a federal claim for purposes

of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65-66

(1987). Any "cause[] of action within the scope of the civil enforcement provisions of § 502(a)

[is] removable to federal court." *Id.* at 66.

### III.  DISCUSSION

What a difference a year makes.   A year ago, the parties spilled much ink arguing over

the final letter of the acronym of Boyd's employer: was it BH*C* or BH*S*?   Boyd then claimed that

her employer was BHS, an entity enjoying ERISA exemption, and this court found that although

Defendants had raised a factual dispute on the issue of her employer's identity, they had failed to

establish that Boyd was mistaken.  Because BHS was not covered by ERISA and because Boyd

had asserted only state law claims, the court found that Defendants had not met their burden to

establish ERISA preemption, and thus, that the case was due to be remanded.

In 2012, Boyd has apparently discovered and acknowledged her alphabetical mistake; she

filed an Amended Complaint in state court stating with confidence—and without so much as a

footnote explaining the reason for her about-face—that her employer was BH*C* after all.

Defendants removed the case for the second time, having received confirmation that they had

been right all along, but undoubtedly scratching their collective heads about why Boyd is now

admitting the very fact that she hotly disputed a year ago.  In any case, after a time-consuming

dance back and forth between state and federal jurisdictions,  the parties find themselves once

more in front of this court, still arguing whether this case falls within ERISA's preemption and

whether it was properly removed: deja vu all over again.

With the issue over the identify of Boyd's employer resolved, Boyd now claims that even though her employer is not ERISA-exempt, this case nevertheless falls outside ERISA preemption because (1) the entity that sponsored her long-term disability policy, BHS, is exempt from ERISA governance and preemption; (2) the long-term disability policy and Plan contain no "ERISA language;" and (3) Advantage 2000 is not an entity subject to ERISA governance and preemption. To the extent that the phrasing of these issues reveals a potential misunderstanding of the ERISA statute and what it governs, the court will provide a prefatory explanation of that statute.

ERISA governs any "employee benefit plan," which is defined as either an "employee pension plan," or an "employee welfare benefit plan."  29 U.S.C. § 1002(3).  An "employee welfare benefit plan" is

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death, or unemployment . . . .

29 U.S.C. § 1002(1).  As both parties acknowledge, the Eleventh Circuit has interpreted this definition as requiring five elements: "(1) a 'plan, fund, or program' (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing [] benefits (5) to participants or their beneficiaries." *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982).  The Defendants' affidavits establish most if not all of these elements, and the only *Donovan* factors that the Plaintiff disputes are the second and third: the

identity of the entity that now maintains and sponsors the Plan.

    A.  Whether ERISA Governs Claims against LINA

        1.  The identity of the entity that sponsors the Plan

As discussed above, if LINA establishes that the entity sponsoring the Plan is Boyd's employer, BSC, an entity that all parties acknowledge is not exempt from ERISA, then LINA has established all of the *Donovan* elements. The court notes that the confusion over which entity sponsored the Plan arose because BH*S* was the original policyholder/sponsor of the Plan but, after the establishment of the Plan, the entities involved made changes. As part of the changes, the entities divided what was once one BHS-sponsored plan into two: a plan for BHS employees and a separate plan for BHC employees. The parties now disagree over whether the Plan *sponsor* changed as to Boyd's benefits.

In her brief, Boyd states that although her employer is BHC, a copy of the employee disability insurance summary provided to her identifies BHS as the Plan sponsor, not BHC. She asserts that BHS is attempting to invoke ERISA merely by changing the name on the policy from BHS to BHC as of January 1, 2008, when the sponsor in fact remains BHS. Attached as Exhibit A to Boyd's original brief filed in opposition to the motion to remand is an undated Plan summary with the title "Long-Term Disability Insurance" on the cover and with the following words printed on the cover's right hand corner: "Developed for the employees of **Baptist Health System, Inc**." (Doc. 9-1, at 2) (bold in original). Attached to Boyd's brief as Exhibit B is an

undated document entitled "Long Term Disability Insurance Cigna[1]" with the following sentence at the bottom of the page: "*Note: While BHC does not sponsor this plan, the BHC HR department can supply you with information about this plan.*"  (Doc. 9-2, at 2).  The parties later identified Exhibit B as the "Total Rewards 2009 Enrollment Guide" summary of benefits.  Boyd points to this language in the two documents provided to her as evidence that, even though BHS is not her employer, BHS is the Plan sponsor of her employee benefits Plan.  Her argument proceeds that because the Plan sponsor is a church-plan exempt from ERISA, any claims brought for failure to pay under the plan are similarly exempt from ERISA.

On the other hand, Defendant LINA asserts that Boyd is failing to recognize the change in Plan sponsor that occurred in January of 2008.  As of that date, the *policy* identified BH*C* as the policyholder and Plan Sponsor.  Thus, a year later in February of 2009, the date Boyd first claimed disability benefits, she was insured under the BH*C* Policy with BH*C* as the Plan Administrator and Sponsor over that Plan.

The court agrees with Defendant LINA.  LINA has established that the policy under which Boyd claims benefits identifies BH*C* as the policyholder and Plan Sponsor as of the date Boyd first claimed disability benefits.  The BHC Booklet/Certificate, with a certificate effective date of January 1, 2008, similarly identifies BHC as the Plan Administrator and states that the "Plan is established and maintained by Baptist Health Centers, Inc. Insured Benefit Plans, the Plan Sponsor."  (Doc. 13-1, at 70 & 86).  It defines the "Policyholder" as the "Employer," which Boyd now acknowledges is BH*C*.  (Doc. 13-1, at 83).  Boyd has produced no Plan documents

---

[1]The court notes that the briefs and documents use Cigna and LINA interchangeably, and the parties appear to agree that although many of the documents list the name "Cigna," LINA is the proper party Defendant.

that establish otherwise; the documents upon which she relies, Exhibits A & B, certainly do not alter those Plan documents.   Exhibit A is undated, and all parties acknowledge that the Plan Sponsor was originally BHS.  Although Exhibit B, the "Total Rewards 2009 Enrollment Guide," was apparently generated after the January 1, 2008 change, it was not a Plan document.  Exhibit B simply shows that BHC failed to catch all of the language on information provided to employees that should have been changed or removed as part of the transition to two policies. The Plan documents consistently reflect that BH*C* was the policyholder and Plan Sponsor as of January 1, 2008; a notation that inadvertently remained on a non-Plan document cannot and does not render those Plan documents ambiguous nor does it alter the identity of the policyholder and Plan Sponsor.

LINA has also established that BHC is a for-profit entity that is not exempt from tax under Section 501.  For example, it has presented to the court copies of BHC's Form 5500 tax return filings with the IRS for the years 2008 and 2009 regarding the Group LTD Plan in question. Boyd has presented no evidence to counter that evidence of BHC's for-profit status. The court acknowledges the Plaintiff's objection in her Reply brief that the tax returns for 2008 were signed in 2009; however, as Defendant points out in its Sur-Reply brief, all tax returns for a particular year are filed the following year.   Having established that the Plan sponsor was BHC, a non-exempt entity, LINA has established all elements of the test for ERISA governance. Further, the court finds that Boyd has not established that the Plan falls within any exceptions to ERISA coverage.  As a result, the court finds that ERISA governs this suit and the ERISA preemption applies, supporting federal jurisdiction.

12

2.   Failure to notify

Boyd asserts that if the Plan Sponsor did indeed change to BHC, Boyd did not receive notification of that change.  If Boyd is arguing that the alleged failure to notify Boyd of the change somehow destroys ERISA's governance and preemption, she provides no statutory or case law support for that position, and the court is aware of none.

3.   Lack of ERISA language

Boyd further argues that ERISA does not govern because the Plan documents contain no ERISA language.  This argument is misplaced.  The court looks to the ERISA *statute* to determine whether ERISA governs.  As discussed above, the Eleventh Circuit has interpreted that statute's definition of plans falling under ERISA based on the *Donovan* factors, not based upon whether the plan documents contain any magic words referencing ERISA.  Indeed, the "test is not whether an employer intended the plan to be governed by ERISA, but rather on whether an employer intended to establish or maintain a plan to provide benefits to its employees as part of the employment relationship."  *Shipley v. Provident Life & Accident Ins. Co.,* 352 F. Supp. 2d 1213, 1217 (S.D. Ala. 2004) (holding that the plan at issue was an ERISA plan because it was established or maintained as an employee welfare benefits plan, and the fact that the plan never mentioned ERISA did not prevent ERISA's governance of it).  The court has found that the Plan meets that test in the instant case.  Further, the court notes that the Booklet Certificate *does* contain ERISA language.

4.   Alleged Contradictory Documents

Finally, in her Reply brief, Boyd maintains that LINA is presenting two different documents as Policy #LK-960527.  The two documents that she references are (1) the 51-page

13

Policy as amended, attached to the Notice of Removal as Document 1-3; and (2) the 21-page BHC Booklet Certificate (the Summary Plan Description for the BHC Plan), filed as  Attachment D to Tracy Hill's Affidavit (doc. 13-1, at 59-93).  The court does not agree that these documents are contradictory.  One is a policy, and one is a certificate/summary plan description for that policy that is written "in a manner calculated to be understood by the average plan participant," as the ERISA code section regarding summary plan descriptions requires. *See* 29 U.S.C. § 1022(a).  The court would not expect both documents to be identical and finds no relevant, material conflict between them as of the relevant period.  As discussed previously, the third document to which Boyd refers is the "Total Rewards 2009 Enrollment Guide," which is not a policy or a Plan document.

     For all of the above reasons, the court finds that ERISA governs the Plan in question and that the court has jurisdiction over the claims against LINA.  The court notes that, in addition to asserting against LINA a breach of disability contract claim (Count IV) and a claim of bad faith failure to pay disability insurance benefits (Count V), the Plaintiff also asserts claims against LINA for fraud regarding representations made about disability insurance coverage (Count I); suppression of material facts concerning her disability Plan and/or disability insurance coverage (Count II); and bad faith failure to pay disability insurance benefits.  However, ERISA case law is clear that such claims fall within ERISA preemption.  *See Anderson v. UNUM Provident Corp.,* 369 F.3d 1257, 1268-69 (11th Cir. 2004) (affirming district court's grant of summary judgment, finding that state law claims of fraud, suppression, bad faith and breach of contract are preempted by ERISA).  At this point, the court need not address how the Complaint needs to be revised and/or which claims need to be dismissed.

14

B.  Claims against BHS

The court notes that BHS has not filed an Answer, a Motion to Dismiss, or a response to the motion to remand.  Rather, it filed a motion to compel arbitration and to stay these proceedings, and a separate motion to keep the case "on hold" pending binding arbitration of the ERISA issue. However, the discussion and rulings above apply to the jurisdiction over claims against BHS.  The court will enter a separate order on these motions.

C.  Claims against Advantage 2000 Consultants, Inc.

The court has previously dismissed with prejudice all claims asserted against Defendant Advantage 2000 Consultants.  (Doc. 23).


Accordingly, although this matter was a case of deja vu for this court, the court does not send it back to St. Clair County for a second look and start the cycle encore une fois; the case remains where it is – at least until the court addresses the motion to compel arbitration, and c'est la vie.

Dated this 11ᵗʰ day of January, 2013.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE